EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

COLGATE–PALMOLIVE COMPANY, Defendant.

No. 81 Civ. 8145 (RWS).

United States District Court, S.D. New York.

June 26, 1985.

See also, D.C., 586 F.Supp. 1341.

E.E.O.C., New York City, for plaintiff; Robert L. Williams, Regional Atty., Jean L. Schmidt, Supervisory Trial Atty., James L. Lee, Alane C. Probst, Senior Trial Attys., New York City, of counsel.

Kelley Drye & Warren, New York City, for defendant; Martin D. Heyert, Paul L. Bressan, Israel E. Kornstein, Ellen B. Silverman, New York City, of counsel.

## OPINION

SWEET, District Judge.

After a fourteen day trial on allegations of age discrimination in promotions in violation of 29 U.S.C. § 621 *et seq.* ("ADEA"), on March 26, 1985 a jury returned a Special Verdict Form, annexed hereto as an Appendix (the "Verdict"), for the plaintiff Equal Employment Opportunity Commission ("EEOC"), with respect to certain allegations of two claimants and in favor of defendant Colgate-Palmolive Company ("Colgate") with respect to certain allegations of four others. As to certain allegations of two claimants, the jury was unable to reach a verdict. Left for resolution by the court were the calculation of damages with respect to the claims on which EEOC prevailed, appropriate injunctive relief on that claim, if any, the determination of EEOC's claim of discriminatory hiring practices by Colgate and any resultant injunctive relief, and Colgate's motion to set aside the Verdict and to dismiss the unresolved claims.

The EEOC complaint alleging discriminatory hiring practices will be dismissed. An injunction will be issued to prohibit future age discrimination in promotions in the Northeastern Region of Colgate's Personal Care Products Division, the Colgate motion for a directed verdict is denied with respect to Short's claim and is granted with respect to Branscomb's claim, and damages for the claims of Burke and Gallup will be awarded as set forth below. The facts and conclusions upon which these determinations have been reached follow.

■ According to the Verdict, Colgate violated the ADEA (a) by not making William Burke ("Burke") the District Manager of the Philadelphia District in January 1979, and (b) by not promoting Raymond Gallup ("Gallup") to three Key Account Manager positions, to wit: (i) in the Philadelphia District in January 1979—the position into which Colgate laterally transferred Randy Ward, (ii) in the Philadelphia District in January 1981—the promotion Sandy Russell received, and (iii) in the New York District in January 1981—the position Peter Marchioni received. Damages for these violations are calculated by measuring the difference between the amounts of salary and bonus Burke and Gallup would have earned in these positions and the amounts of salary and bonus they actually earned as Area Manager and Unit Manager, respectively. *Montoya v. Anderson,* 511 F.Supp. 523 (D.Colo.1981); *Berke v. Ohio Department of Public Welfare,* 30 FEP Cases 387 (S.D.Ohio 1978), *aff'd,* 628 F.2d 980 (8th Cir.1980).

■ Since Burke and Gallup would have been paid pursuant to Colgate's Salary and Bonus Programs had they received the jobs the jury found they did not receive because of their ages, the appropriate differences in salary and bonus compensation are based on these Programs. *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161 (S.D.N.Y. 1983). Thus, the relevant consideration is the amount the discriminatees would have received in the positions, not the amounts others received in those positions.

In determining the specific merit salary increase for an individual employee, the following factors are considered, according to the unrebutted affidavit of Robert Burg sworn to April 23, 1985 (the "Burg affidavit"): (i) The company's merit increase budget, which is the maximum aggregate percentage merit increase allowed for Colgate's total employee complement for a given year, (ii) the employee's current position in the range of salaries for his salary grade, and (iii) the employee's performance evaluation for the preceding year. These factors determine the percentage increase a particular employee gets and the time of that increase.

In addition, Colgate gives a percentage salary increase to employees who receive promotions based on such factors as the date of the employee's last merit increase, the current and probable future performance, the new base salary in relation to peers, subordinates and superiors, and the position in the salary range for the new job after promotion. In addition to its Salary Program, Colgate has a Bonus Compensation Plan, which is designed to reward sales personnel for attaining quota. Colgate computes each employee's bonus quarterly,

based on the Region's performance. Thus, the bonus is identical for all employees in the Region in each salary grade.

■ Had Burke become Philadelphia District Manager on January 1, 1979, rather than Area Manager, he would have earned an additional $11,488 in base salary and an additional $24,172 in bonus compensation, for a total of $35,660, through the end of calendar year 1984, assuming a "satisfactory" performance rating.

■ EEOC has challenged Colgate's calculations, not as to accuracy, but as to method. While Colgate's calculation used average figures, EEOC proposed an earnings figure roughly midway between the average and the amounts actually received by Stephen Frenda ("Frenda") who in fact was promoted to become Philadelphia District Manager. Aside from citing the general proposition that uncertainties in this area be resolved against the discriminating employer, *Cohen v. West Haven Bd. of Police Commissioners*, 638 F.2d 496, 502 (2d Cir.1980), *EEOC v. Enterprise Association Steamfitters*, 542 F.2d 579, 587 (2d Cir.1976), EEOC offers no reasoned basis for using its above-average figure. Obviously no empirical evidence was offered which could be said to demonstrate that Burke's performance would have equalled Frenda's. Consequently, the average figures used by Colgate will be adopted.

■ Since there will be no injunction requiring Colgate to promote Burke at the expense of an existing District Manager, *Patterson v. American Tobacco Co.*, 535 F.2d 257, 268–69 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976), it is appropriate to consider what EEOC refers to as "front pay," that is, the continuation of pay at a determined level in the event that reinstatement is not possible. *See, Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727 (2d Cir.1984). In *Whittlesey*, in lieu of reinstatement resulting from an unlawful compulsory retirement, the discriminatee was entitled to continued receipt of his pay as if reinstatement had occurred. Similarly, in order to be compensated fully for the discrimination, Burke is entitled not only to damages up to the entry of judgment, but also to front pay until found qualified for promotion as a district manager or equivalent position, or disqualified for reasons other than age. Front pay will equal the differential between the actual salary earned and the salary that would have been earned with the promotion.

■ The same considerations apply to the calculations applicable to the failure of Colgate to promote Gallup to Key Account Manager in the Philadelphia District on January 1, 1979. The Colgate calculations will be accepted, and front pay as defined above required until Gallup is promoted or disqualified for age-neutral reasons.

■ In Gallup's case, an additional issue was raised by a post-trial submission which by affidavit presented evidence that Gallup in the summer of 1981 refused to move out of his assigned geographical district because of personal and family reasons. When asked upon direct examination in EEOC's rebuttal case if he ever made a statement refusing to relocate in the summer of 1981, his unequivocal, monosyllable answer was, "no". There was no attack on this testimony. The conflict between the affidavit of Paul Manning and the trial testimony of Gallup must be resolved in the latter's favor. There is consequently no 1981 cut-off. Gallup is entitled to a $34,-641.00 recovery representing $15,846 in base pay and $18,795.00 in bonus compensation through December 31, 1984, as well as "front pay.".

■ The Verdict found Colgate's action to be wilful and the back pay awards are thus doubled. The front pay awards, however, are not subject to doubling, since the current inability to promote Burke and Gallup is not a consequence of established wilful discrimination but is a result of there being no vacancies in the relevant job levels.

■ In addition, EEOC seeks prejudgment interest, noting candidly that there is strong authority against its position. Even assuming that there is discretion to award prejudgment interest, contrary to those au-

thorities which hold that prejudgment interest cannot be awarded in the absence of statutory authority, *see Hill v. J.C. Penney Co., Inc.,* 688 F.2d 370 (5th Cir.1982); *Barcellona v. Tiffany English Pub, Inc.,* 597 F.2d 464, 469 (5th Cir.1979), it will not be awarded where Congress has made the discriminatee whole through the award of liquidated damages. *See O'Donnell v. Georgia Osteopathic Hospital, Inc.,* 748 F.2d 1543, 1552 (11th Cir.1984); *Rose v. National Cash Register Corp.,* 703 F.2d 225, 230 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Kolb v. Goldring, Inc.,* 694 F.2d 869, 875 (1st Cir. 1982); *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1114 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981); *Putterman v. Knitgoods Workers Union Local 155,* No. 78 Civ. 6000 (S.D. N.Y. Feb. 19, 1985).

As to Colgate's hiring practices, it is virtually undisputed that no one over forty was hired by Colgate at its entry level, except for one New York resident, whose name drifted in and out of the testimony but who never appeared in the flesh. It was also undisputed that Colgate hired its sales force only at the entry level.

■ No evidence was presented by EEOC to contradict Colgate's claim that its entry level hiring was based on its policy of in-house training rather than age discrimination. There was no evidence connecting the Colgate policy to age considerations, even though it is obvious that the entry level salaries would discourage those whose responsibilities have matured as well as their ages. There was isolated, challenged testimony that two managers stated that they favored young, aggressive salesmen. Indeed, no serious attack was made on the repeated testimony of Colgate managers that their hiring, albeit always at the entry level, was age neutral. There is no evidence as to the number of persons over age forty who applied for the low-paying entry-level sales position and, of these applicants over forty, whether the Company rejected any who were qualified. The proof with respect to age discrimination by Colgate in hiring was simply not preponderant, nor was there any evidence that

Colgate's professed policy was pretextual. Since EEOC failed to meet its burden of proving discrimination in hiring, no injunctive relief in that regard is appropriate.

■ However, by definition that burden was met with respect to the discrimination in failing to promote Burke and Gallup because of age. An injunction against such a practice in the region where it occurred is appropriate here as part of the overall relief to which EEOC, Burke and Gallup are entitled, despite the fact that such discrimination was found to occur with respect to only two of some five hundred employees. Further, Rafferty's self-characterized "shooting off my mouth" as captured on the Hertenstein tape, cannot be brushed aside. The statement "... I don't think between you and I with the way the Company's going there'll be any sales managers appointed over fifty—any place. Off the record. I would deny it," made by the National Sales Manager, reverberated through the trial and echoes even now loudly enough to require injunctive relief for a three year period from the date of its entry.

■ No evidence has been presented upon which it could be inferred that Colgate will retaliate against employees who assisted EEOC in this proceeding. Since such retaliation would give rise to yet another cause of action, and because Colgate is extremely well advised, an injunction forbidding such retaliation is not only unwarranted upon the proof presented but is unnecessary in view of existing statutory protection.

Of course, no injunction against discriminatory promotions would be appropriate if Colgate's motion to set aside the verdict as to Burke and Gallup were well-founded.

■ The standard was set forth in *Penn v. Brattleboro Retreat,* 702 F.2d 322 (2d Cir.1983):

The Supreme Court has stated, regarding motions for directed verdicts and judgments n.o.v.,

When the evidence is such that without weighing the credibility of the witnesses

there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding ... without submission to the jury ... By such direction of the trial court the result is saved from the mischance of speculation over legally unfounded claims.

*Brady, Administratrix v. Southern Railway Co.*, 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943). The standard in this circuit is whether "the evidence, viewed in the light most favorable to the non-movants without considering credibility or weight, reasonably permits only a conclusion in the movants' favor." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir. 1982); ...

702 F.2d at 323. The Rafferty statement, the history of the promotional process, and the jury's assessment of all the employees involved, raise sufficient issues to require the denial of Colgate's motion to set aside the verdict as to Burke and Gallup.

■ However, the evidence with respect to the second instance of alleged discrimination against Lionel Branscomb ("Branscomb"), upon which the jury was unable to agree, stands in a different posture. The jury in the Verdict held, in effect, given the testimony before it and the charge of the court, that there was a reason, other than age, on which Colgate based its decision not to promote Branscomb to Regional Manager in October 1978. The jury was unable to reach a verdict, however, with respect to the failure to promote Branscomb to the same post in February 1984, a promotion which entered the action, over Colgate's objections, after its filing in 1981.

The only direct evidence of any discriminatory intent was Rafferty's recorded confidential comment to Hertenstein on January 5, 1981, already quoted above. Yet by 1984, this action had been filed, and Rafferty had been removed from the sales organization and the promotion process for salesmen in the Personal Care Products Division. There was direct evidence on Branscomb's evaluation forms which classified him as having performed satisfactorily, or in 1981 very satisfactorily, and having only an average potential for advancement. In 1982 he was rated as marginal, and in 1983 he was recommended for National Accounts Manager.

In addition, there was clear and convincing evidence that Branscomb during the pre 1978 period violated Colgate's policy with respect to sales which assisted diverters (in the lexicon of the litigation, merchants selling Colgate products outside customary trade areas or at special prices), snowbirds (anticipatory orders entered for internal quota purposes rather than as a result of customer commitments and which are cancelled after the accounting period), promotional allowances, personnel policies, entertainment and travel expenses, and interviewing practices. Colgate narrowly averted a charge of racial discrimination as a result of Branscomb's interview of Diane Marie White in 1981. These derelictions of Branscomb's were known to his superiors and made the subject of reports or interviews.

In 1984 Alan Kendall was appointed to the Northeast Regional Manager position. There was no evidence submitted upon which it could be inferred that Alan Kendall was inferior to Paul Manning, who received the 1978 appointment. Indeed, the argument was never made. Of course, both men were under fifty when appointed. Kandall's record contained no breaches of policy similar to Branscomb's, and his evaluations were consistently better than Branscomb's. Although Kendall was under fifty, there was no relevant evidence to establish that but for his age Branscomb would have received the appointment.

The evidence of the Rafferty-Hertenstein conversation of January 5, 1981 is insufficient to raise a factual issue concerning the 1984 promotion in the face of the uncontroverted written records of the two men at issue and the absence of any evidence upon which it could be inferred that any age discrimination policy continued in face of this litigation. To reach a contrary conclusion would be to condemn Colgate to findings of eternal age discrimination based on Rafferty's comments and would mandate

the selection of fifty year old managers in order to prove him wrong. Given the undisputed aspects of Branscomb's record and his delinquencies, EEOC has failed to raise a factual issue that Colgate's stated explanation for the failure to promote was pretextual.

■ The jury also failed to agree on EEOC's claim that James Short ("Short") would have been promoted to District Manager in Philadelphia in October of 1978 but for his age. Colgate has also moved to dismiss his claim. It is indisputable that Short's evaluations were inferior to Steven Frenda's, who received the post, and that Short was unaware of any age bias on the part of Colgate. The high water mark of Short's qualifications was the statement in his 1977 and 1978 appraisals that he "should ... be ready" for a District Manager assignment. Certainly there was sufficient evidence upon which one could conclude that there was an age neutral basis for the decision.

On the other hand, the Verdict established on a not dissimilar record that during this period Colgate did discriminate against Burke and Gallup and in that connection undoubtedly gave weight to the Hertenstein tape. On all the evidence a factual issue has been presented meriting jury resolution.

However, Colgate persuasively presents the problem of double discrimination, citing *Patterson v. Greenwood School District 50*, 696 F.2d 293 (4th Cir.1982), in which the Fourth Circuit reversed a district court's award of promotion and back pay to an employee who, even absent discrimination, would not have been promoted. There, an employee claimed she was the object of sex discrimination in violation of Title VII when she was passed over for a promotion. The district court found that there had been discrimination and awarded her back pay and promotion to the next available position. The Fourth Circuit found that other female applicants who were also the objects of sex discrimination would have been hired ahead of her based on their qualifications, and thus reversed the district court's award. *Id.* at 296. Similarly, *Pollard v.*

*Grinstead*, 741 F.2d 73 (4th Cir.1984), stands for the proposition that when two claimants for the same job opening have been unlawfully discriminated against, only one may recover damages. *Id.* at 75-76. The applicant who is denied the job because the other alleged discriminatee has superior qualifications has not been denied a job as a consequence of her race, age, or sex.

■ EEOC failed to respond to Colgate's citation of these authorities or to comment upon the problem thus created. EEOC failed to cite any other courts which have dealt with a similar problem. In an exercise of judicial creativity, in the event that a retrial is held on Short's claim and a verdict is obtained in his favor, I conclude that the jury will also be asked to determine whether Burke or Short would be entitled to the post. Because of this uncertainty, execution of the judgment in Burke's favor will be stayed, the amount of the judgment will be placed in an escrow interest bearing account by Colgate pending a further determination in accordance with this decision.

Settle judgment on notice in accordance with these findings and conclusions, extending calculations of back pay to March 26, 1985, and establishing a proper mechanism for the annual calculation of appropriate front pay.

IT IS SO ORDERED.