**Ruby A. WISE, Plaintiff,**

v.

**OLAN MILLS INCORPORATED OF TEXAS, Defendant.**

**Civ. A. No. 79–C–1441.**

United States District Court, D. Colorado.

Aug. 19, 1980.

Philip Burton Green, Denver, Colo., for plaintiff.

Lee Dale, Sherman & Howard, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This is an action pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. section 621, *et seq.* It is now before the Court on motions concerning two issues which need to be decided prior to trial: (1) whether the plaintiff's claims for punitive damages are barred by section 13–80–104, C.R.S.1973, the Colorado one-year statute of limitations applicable to all "actions and suits for any penalty or forfeiture"; and (2) whether unemployment compensation, social security, and pension benefits which the plaintiff received after her termination by the defendant should be deducted from any back pay award the plaintiff may receive.

### *Punitive Damages—Statute of Limitations.*

The plaintiff was terminated by the defendant in May 1978. After informal conciliation efforts failed, the plaintiff filed this suit in October 1979. The defendant contends that the plaintiff's claims for punitive damages [1] are barred by the one year statute of limitations in section 13–80–104, C.R.S.1973.[2]

---

1. This Court held in a prior opinion in this case that punitive damages could be recoverable. *Wise v. Olan Mills*, 485 F.Supp. 542 (1980).

2. Section 13–80–104 provides:
   "All actions and suits for any penalty or forfeiture of any penal statute, brought by this state or any person to whom the penalty or forfeiture is given, in whole or in part, shall be commenced within one year after the offense is committed and not after that time."

There is some uncertainty whether, in a suit pursuant to the ADEA, claims for punitive damages are subject to the limitations period applicable to other claims under the Act (29 U.S.C. section 255(a)), whether another federal statute of limitations applies, or whether a federal court should "borrow" an appropriate state statute of limitations because no federal statute is applicable. The defendant argues that the last course is required here, and that the one year limitation statute for penalties is the the most appropriate Colorado provision.

Because of the time periods here involved, it is unnecessary to determine whether a federal or state statute is applicable if it is determined that the one year limitation period of section 13–80–104 is *not* applicable. This Court holds that it is not.

This issue has been disputed for several years. Recently, however, the Colorado Court of Appeals held that a claim for punitive damages asserted in conjunction with an underlying negligence claim for compensatory damages was not barred by the one year limitation on claims for penalties set out in section 13–80–104. *Jones v. Harding Glass Co.,* Colo.App. (No. 79CA1092, announced July 3, 1980). That court reasoned that dependence of the exemplary damages "claim" on the underlying tort claim distinguished the action from a suit for a "penalty or forfeiture of any penal statute" governed by section 13–80–104. *See also Resource Exploration & Mining, Inc. v. ITEL Corporation,* 492 F.Supp. 515 (D.Colo. 1980) (Carrigan, J.); *Dorney v. Harris,* 482 F.Supp. 323 (D.Colo.1980) (Kane, J.). *Contra, Sherwood v. Graco,* 427 F.Supp. 155 (D.Colo.1977) (Finesilver, J.).

■ Moreover, it should be obvious that a prayer for punitive or exemplary damages is not a "claim" at all, in the sense of a claim for relief or cause of action to which a statute of limitations is directed. The spe-

cial one year limitation in section 13–80–104 applies to actions created by penal statutes, not prayers for damages arising out of claims for relief not based on penal statutes. Since the plaintiff's punitive damages prayer in this case does not derive from a penalty or forfeiture provision, but merely seeks an additional form of damages dependent on her underlying ADEA claim, the reasoning of the above cited cases applies here. Accordingly, the plaintiff's claims for punitive damages are not barred by the statute of limitations.

*Deductions from Back Pay.*

Since her termination, the plaintiff has received unemployment compensation, social security, and pension benefits. The defendant contends that evidence of these monetary benefits should be admissible at trial, and that the sums the plaintiff has received should be deducted from any back pay award the plaintiff might receive.

■ The United States Court of Appeals for the Tenth Circuit recently clarified the law on this point. *Equal Employment Opportunity Commission v. Sandia Corporation* (10th Cir., No. 79–1589, announced August 13, 1980). In *Sandia,* the Court held that unemployment compensation benefits should *not* be deducted, because "unemployment compensation is purely a collateral source and is peculiarly the property of the claimant." *Id.,* Slip Opinion at 61.[3]

Although neither social security payments nor pension benefits were involved in *Sandia,* the Tenth Circuit's reasoning provides guidance in considering whether those payments should be deducted or set off. The Court of Appeals in *Sandia* held that certain layoff allowances—which were likened to severance pay—*should* be deducted from back pay awards under the ADEA. The Court reasoned that such a payment is

---

**3.** The Court noted with apparent approval Judge Kane's reasoning in *Pedreyra v. Cornell Prescription Pharmacies, Inc.,* 465 F.Supp. 936 (D.Colo.1979), that deducting unemployment compensation benefits is particularly inappropriate in Colorado, since section 8–73–110(2), C.R.S.1973, requires an employee who receives a back pay award to repay to the Colorado Division of Employment and Training all benefit payments made for a period for which a back pay award is later received.

deductible "since it is a payment made wholly by the employer; thus it is not a collateral benefit and moreover would not have been made if the termination had not occurred and, therefore, goes beyond the damages necessary to place the claimants in a whole position." *Id.,* Slip Opinion at 65. The Court thus distinguished the layoff allowance from unemployment compensation by noting that the latter, as "social insurance payable by the state," was a "true collateral benefit," while the former was not. *Id.,* Slip Opinion at 66.

■ Despite the differences between unemployment compensation plans and social security, social security benefits seem plainly to fall within the scope of the reasoning applied in *Sandia* to unemployment benefits. Although partially funded by employer contributions, social security payments are nonetheless "collateral" both in the source of at least some of the funds and in the purpose for which they are paid. In short, they are as much "social insurance" benefits as the unemployment benefits considered in *Sandia.* Therefore the social security payments received by the plaintiff following her termination will not be deducted from any back pay the plaintiff receives.

■ The pension or retirement payments the plaintiff received, however, are not so clearly within the collateral source rationale, since they were funded entirely by the defendant and did not come from any third party. There is a strong argument, of course, that regardless of the *source* of the money, the pension benefits are collateral because they are paid for a different purpose than to protect the employer from liability for wrongfully discharging an employee. Thus, as the plaintiff points out, it may be unduly beneficial to the defendant to deduct the payments simply because the wrongful termination, together with the

plaintiff's vested right to benefits under the plan, made the plaintiff eligible for retirement benefits. *See, e. g., Haughton v. Blackships, Inc.,* 462 F.2d 788, 791 (5th Cir. 1972).

Nonetheless, based on the guidance provided by the *Sandia* opinion and the fact that damages other than back pay will be permitted to be proven in this case, it is this Court's conclusion that it is fairer to require that the pension benefits be deducted from any back pay award. This holding will neither provide the defendant a windfall nor prevent the plaintiff from being made whole. To hold otherwise would exceed the purposes of the back pay provision and the collateral source rule and might well result in a windfall to the plaintiff.[4]

---

4. This ruling regarding pension benefits, however, has one qualification: should it appear from the evidence that because of pension payments the plaintiff has already received, she would upon future "re-retirement" (assuming *arguendo* that she were to be reinstated) be entitled to a lesser pension, these benefits will *not* be deducted from any back pay award to the extent of future detriment. This is a matter upon which the Court has insufficient information to rule at this time, and it will depend on the terms of the pension plan itself and the outcome of the case.