**Angel F. Martinez LOUBRIDO, Plaintiff,**

v.

**HULL DOBBS COMPANY OF PUERTO RICO, INC., Defendant.**

**Civ. No. 77–123.**

United States District Court,
D. Puerto Rico.

Nov. 20, 1981.

---

Antonio Moreda Toledo, Moreda & More-da-Toledo, San Juan, P. R., for plaintiff.

Reinaldo Ramos Collazo, McConnell, Valdes, Kelley, Sifre, Griggs & Ruiz-Suria, San Juan, P. R., for defendant.

## MEMORANDUM OPINION

CEREZO, District Judge.

There was a bifurcation of issues in this age discrimination action and the matter of liability was presented to the jury while the issue of compensation was left for the Court to determine should the verdict be favorable to plaintiff. On March 8, 1979, after a trial of three days, the jury returned a verdict for the plaintiff and thereafter the case was referred to the U.S. Magistrate for further proceedings. A hearing was held on August 16, 1979 before the Magistrate who filed a Report and Recommendation to the Court on December 21, 1979. Oppositions to the Magistrate's Report and Recommendation were filed and the case, having stood submitted and under the advisement of the late Hon. José V. Toledo until his death in February of 1980, was referred to the undersigned on September 15, 1980. Both parties having agreed that this judge decide the issue of liquidated damages and briefs having been filed by the parties on their respective positions on this issue, the Court proceeded to consider the objections to the Magistrate's Report and Recommendation pursuant to 28 U.S.C. Sec. 636(b)(1)(C). After listening to the recordings of the hearing held on the issue of damages or "back wages" and considering all the evidence submitted by the parties, the Magistrate's Report and Recommendation is modified as follows:

I. *Time Period for the Computation of Back Wages*

Defendant's objection to the Magistrate's determination that its offer of employment to plaintiff was not a bona-fide offer of

employment is directly related to the Magistrate's determination of the time period for computing compensation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. 626(b). For the reasons stated in Part III of this opinion we think that defendant's objection to the finding that plaintiff mitigated damages after August 1978 is also related to the computation of the back pay period. However, since the Court will be following the format of the Magistrate's Report, it will be discussed with the objections relative to exclusions from back pay, (infra, Part III).

It has been held that under the ADEA "the period of back pay is measured from the time of the loss of employment as a result of the violation to the time when the employee accepts or declines reinstatement at his former position or at a position of comparable status, salary, benefits and potential for advancement." *Coates v. National Cash Register, Co.*, 433 F.Supp. 655, 663 (W.D.Va.1977). This formula, however, requires a finding that the offer of reemployment made by the defendant was a "bona-fide" offer which plaintiff should have accepted in order to mitigate his damages. If so, the cut-off date for computing back pay is the date plaintiff should have accepted the offer but refused it. If, however, said offer was not a bona fide one, plaintiff would have had no obligation to accept it and the award for back wages should be computed as of the date the damages are settled, or, in this case, judgment is entered on the issue of compensation. See: *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1006 (1st Cir. 1979); *Monroe v. Penn-Dixie*, 335 F.Supp. 231, 235 (N.D.Ga.1971).

Plaintiff, a former truck manager with defendant, a corporation that sells vehicles in Puerto Rico, was offered a job as a commissioned salesman in another department. As a commissioned salesman his income would have depended only on commissions, whereas in his job as manager of the truck department he received a fixed salary plus a share in the company's profits. In addition, the position of manager is higher in status than that of salesman. For these reasons, we uphold the Magistrate's finding that the offer of reemployment made by defendant was not a bona fide one. See: *Buchholz v. Symons Manufacturing Co.*, 445 F.Supp. 706, 712 (E.D.Wis.1978). Defendant's objection to this finding is, therefore, overruled, and back wages shall be computed as of the date of issuance of this Judgment, subject to the exclusions and deductions allowed hereinbelow.

## II. *Back Wages*

Subdivision (b) of Section 7 of the Age Discrimination in Employment Act, in its pertinent part reads:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title... In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section. 29 U.S.C. Sec. 626(b).

Under the ADEA, damages in the form of back wages have been held to equal the difference between the value of the compensation by way of salary, together with other specific monetary benefits, to which plaintiff would be entitled had he remained employed by the defendant until the date damages are settled and the value of his total benefits and earnings at other jobs from his discharge until that date. *Monroe v. Penn-Dixie, supra; Loeb v. Textron, Inc., supra.* In computing the back wages owed plaintiff, the Magistrate considered his past earnings with defendant as well as the amounts paid to the three persons who admittedly occupied plaintiff's position with defendant. Based on the salary received by plaintiff during the last four years he worked for defendant and the salary of these persons, averaged where more than

one occupied the position for a same year and adjusted by plaintiff's annual business expenses, the Magistrate determined that plaintiff's estimated adjusted gross income, had he retained his employment, would have been $17,996.56 a year.

Defendant objects to the use of the figures given for the salary of plaintiff's replacements in computing back wages. It alleges this is too discretionary and should not be allowed. It would rather have the Court use the amount of $14,393.57, which represents plaintiff's average adjusted gross income for the last four years he was employed with defendant. It argues that the persons employed in plaintiff's position had a dual job in the company for which they received greater compensation.

■ It is correct that the salaries of these three persons do not accurately reflect plaintiff's unpaid back wages. However, the sum of $14,393.57 does not reflect them either. Accordingly, the Magistrate's findings on this matter are modified and plaintiff's back pay is computed utilizing the monthly salaries, excluding commissions or profit participation, of the employees who substituted him and whose salaries were based on that truck manager position alone.

It appears from the deposition of Joe Rivera, General Sales Manager of defendant in 1979, which was submitted in evidence at the hearing before the Magistrate that of the three persons that held plaintiff's position as Truck Sales Manager the one who had a dual position was Fernando Figueroa, also General Sales Manager for defendant, with a basic monthly salary of $1,000 in addition to profit participation. He held the position of truck manager for two or three months only in 1976. He was substituted by one Carlos López Colón who had a basic salary equal to that of plaintiff when he was terminated,[1] but who received a salary increase of $250 monthly for a total of $950. It is not speculative to infer that

plaintiff would have earned that salary had it not been for his termination. Since López Colón's salary remained constant until June or July 1977 when he was transferred to an affiliate division, it is also reasonable to conclude that plaintiff would have earned the same amount until mid-1977 for a total of $18,050 from January 1976 to July 1977. Thereafter Mr. Fernando Figueroa occupied the position, again as General Sales Manager and Truck Manager combined, with the same salary as before. This combination of duties makes it rather difficult to attribute his salary to that of plaintiff had he remained employed. On the other hand, López Colón received an increase on account of his transfer to the affiliate division. It is the salary of Isaac Parrilla, the person who substituted Figueroa as Truck Manager in May or June of 1978 until the date of the hearing, which best represents what plaintiff would have earned had he remained in that position.[2]

■ An award of back pay should include the fringe benefits the employee would have received had he remained employed by the defendant. See: *Coates v. National Cash Register, supra.* Among the fringe benefits that plaintiff received while working for defendant was an automobile for employment related activities, gasoline expenses, plus maintenance and insurance covering the car. The Magistrate concluded that the economic benefit which said automobile represented to plaintiff was $400 a month, plus $20.50 monthly that the company paid for the car insurance. Defendant objects to this finding on the grounds that this figure was offered by plaintiff in his testimony and was a matter of credibility which the Magistrate could not adjudicate. Aside from the fact that nothing in 28 U.S.C. Sec. 636 prohibits a U.S. Magistrate from assessing witness credibility, and that in certain cases this has been found not to violate any of the parties' rights to a procedural due process,[3] $400 a

---

1. That is, $700 monthly.

2. Coincidentally, this is the same as Mr. Fernando Figueroa, or $1,000 monthly.

3. See: *United States v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

month does not seem an unreasonable amount, considering what plaintiff would have spent in monthly payments had he personally acquired a comparable car.[4] Defendant's objection to the Magistrate's calculation of the automobile's value is, therefore, unfounded. To plaintiff's unpaid wages, an amount equal to $10,889.50[5] shall be added to make up the award of back wages.

■ Commissions are another item of the back pay award. Commission awards are permissible where they can be predicted with reasonable certainty. *Buchholz v. Symons Manufacturing Co., supra,* at 712. Plaintiff's salary included 2½% share of defendant corporation's profits in addition to his basic salary of $700 a month. It appears that until February 1977 this distribution of profits was based on a participation in the corporation's profits. Unlike ordinary commissions, this plan did not depend on the individual efforts of plaintiff and could be determined if the figures pertaining to the company's profits were available. No such information is on record. Nevertheless, it appears that Mr. López Colón's participation in the plan earned him the sum of $6,369.00 in commissions for the year 1976.[6] Since this employee was receiving only 2% of the profits, a mathematical computation gives us the figure of $318,450 for the corporation's profits in 1976. Two and a half (2½) per cent of that amount is $7,961.25 which would have been plaintiff's participation in the profits for the year 1976, had he remained employed with defendant. Thereafter, it appears that the profit sharing plan was changed in 1977 to what the company called an "incentive plan" based on the income generated by the departments combined with commissions based on individual sales. It is unclear from the records how this was computed, but it appears that the plan was different for each employee depending on the position held and on the units sold. The commissions plaintiff would have accrued from 1977 to this date cannot be determined with reasonable certainty and cannot be included in the back pay award.

Based on the above, the Court finds that plaintiff's compensation and benefits had he remained on the job equal the sums of $18,050, $10,889.50, and $7,961.25,[7] plus $1,000 monthly after July 1977, subject to the exclusions made below.

III. *Exclusions from Back Wages*

■ Defendant's objections numbered 3, 4, 5 and 7 relate to this section of the Magistrate's report. Citing *Coates v. National Cash Register Co.,* 433 F.Supp. 655 (W.D.Va.1977), the Magistrate excluded severance pay received by plaintiff upon termination of his employment, unemployment compensation collected and salary earned while working at another job. He did not deduct, however, any amounts that the plaintiff should have earned but did not because he was not diligent in mitigating damages. The Magistrate concluded that plaintiff used reasonable diligence to obtain an employment comparable with the one he had with defendant, that he found such a job in November 1976, that he worked until he had an occupational accident and that he actively looked for another job after he recovered from his injury. Defendant contends that plaintiff failed to mitigate damages because he found the job with a new car dealer in May 1976 and did not accept it until November of that year. After having heard plaintiff's recorded testimony at the hearing we find the Magistrate's determination for that period before November 1976 to be correct. It appears that plaintiff could not have accepted the job earlier than November 1976 because the new dealer was just starting his business in May 1976 and

---

4. A Ford LTD.

5. This amount is the sum of the quantities included in Annex "A" of the Magistrate's Report. We note that the Magistrate excluded the period wherein plaintiff received a car from Capitán Correa, Inc., while working for it.

6. Mr. López Colón, as indicated before held plaintiff's position until mid-1977.

7. $36,900.75.

did not have the position of truck manager available until November. Defendant alleges that plaintiff's not accepting the job in May 1976, but rather waiting until November shows that he was waiting to exhaust unemployment compensation. Aside from the fact stated before, that plaintiff did accept the offer in May but the position was not available until November, the evidence established that plaintiff did look for other jobs with other car dealers and that he even tried to make it on his own but failed. Furthermore, defendant cannot expect to deduct from the back pay award the amounts collected for unemployment compensation and also exclude that period from the computation of back wages.

■ Defendant also contends that the Magistrate was mistaken in not finding that plaintiff failed to mitigate damages after August 23, 1978 when he recovered from his occupational injuries. Defendant argues that plaintiff chose instead to seek and obtain Social Security benefits for disability and that the Magistrate wrongly applied the collateral source rule in this case by not deducting from the award the amounts received from the Veterans' Administration and from the Social Security Administration. This objection leads to a discussion of a problem which did not arise in any of the cases which have been the object of our research. It deals with the effect of plaintiff having become disabled prior to the time his age discrimination claim is resolved. Undoubtedly, plaintiff could not be expected to mitigate damages by searching for a job which he could not perform because of his disability. Therefore, if the period during which plaintiff was disabled under the Social Security Act is to be excluded, the grounds for this cannot be that he failed to mitigate damages. Nevertheless, the same reasons for excluding the time period during which he was

disabled because of the accident at his second job also exist for excluding the time he was disabled under the Social Security Act because under such circumstances he could not have worked for the defendant or for anybody else.[8] This period is, therefore, excluded in computing the back pay period. Since it appears that at the time of the hearing plaintiff had been receiving disability benefits from the Veterans' Administration since October 1977 and from the Social Security since April 1978, he is not entitled to recover from defendant any unpaid back wages for this period of time. The amounts so received, however, are not deductible from the compensation allowed to plaintiff in this opinion. Therefore, only severance pay,[9] unemployment compensation[10] and salary earned[11] with the second employer shall be deducted and the period after and including October 1977 to the date of the hearing shall be excluded from the pay period. The back pay compensation computed in this manner shall be for the sum of $28,037.64.

## IV. *Liquidated Damages*

Pursuant to 29 U.S.C. Sec. 626(b) plaintiff may recover liquidated damages only in cases of willful violation of the Age Discrimination in Employment Act. In his Report and Recommendation the Magistrate did not consider the issue of liquidated damages as it depended upon a finding of fact which should have been made by the judge who presided the hearing on the issue of liability. Chief Judge José V. Toledo who presided said hearing in March 1979 has passed away and the parties have agreed that the undersigned determine this issue.

"An act is done 'willfully' if done voluntarily and intentionally, and with specific intent to do something the law forbids; that is to say, with bad purpose either to

---

**8.** The parties stipulated that this period should be excluded from the back pay period.

**9.** It should be noted that severance pay received by plaintiff on account of his termination equaled his basic salary for the month of December 1975. For this reason, back wages

have been computed since January 1976 and the exclusion of severance pay was automatically made. See: Part II of this Opinion.

**10.** $2,200.00.

**11.** $8,663.11.

**1062**

disobey or to disregard the law." *Loeb v. Textron, Inc., supra,* n. 27, p. 1020; citing from E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions,* Sec. 14.06, at 384 (3rd Ed. 1977). In *Loeb* a jury had determined that defendants had "willfully" discriminated against the plaintiff. Interpreting the FLSA and the ADEA and citing *Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) the Court concluded that, in view of the ADEA's inclusion of the "willfulness test," incorporation of section 11 of the Portal-to-Portal Act was "superfluous" since this section intended to do for the Fair Labor Standards Act what the willfulness test does for the ADEA which is to mitigate the result of awarding liquidated damages upon finding a violation of the Act without more.

■ In our case we do not have a finding by the jury that defendant willfully violated the Act. This question was left to the Court to determine from the evidence in the record. After considering all of this, having read the transcript of the trial on the issue of liability, the Court finds that defendant willfully violated the Act by dismissing plaintiff, regardless of whether it was prohibited by the Act. It is found that plaintiff's age was the determining factor for his termination, and that no other reasons existed, within the meaning of 29 U.S.C. Sec. 623(f), which would persuade the Court to conclude that defendant believed its action was not covered by the provisions of the Act. The Court therefore concludes that defendant knowingly and willfully violated the ADEA and is liable to plaintiff for liquidated damages in the sum of $28,037.64.

## V. *Interests*

■ The Magistrate recommended that the legal interest of 6% per annum be included in the award and computed from the date back wages became due. No objection was presented as to this item of compensation. Nevertheless, the Court finds that prejudgment interests are wholly inappropriate in this case where liquidated damages have been granted which fairly compensate plaintiff for the loss of having his wages withheld by his employer. See: *McClanahan v. Mathews,* 440 F.2d 320, 324–326 (6th Cir. 1971).

## VI. *Attorney's Fees*

■ Attorney's fees and costs are allowable under the ADEA. *Monroe v. Penn-Dixie,* 335 F.Supp. 231, 234 (N.D.Ga.1971). The Magistrate recommended that $1,500 in attorney's fees be awarded to plaintiff and objection was raised to this as not in accordance with the purposes of the ADEA. This all too modest attorney's fees award does not accomplish the purposes of the Act. Having evaluated the work of plaintiff's attorney in this case the Court increases the fees to $15,000. The costs incurred by plaintiff in this case shall also be paid by defendant.

## VII. *Deferral*

Defendant contends that, pursuant to the Supreme Court's decision in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), plaintiff should have exhausted state remedies before seeking judicial relief. Suffice it to say that at the time this action was filed the *Oscar Mayer* case had not yet been decided and that, pursuant to the Court of Appeal's decision in *Lugo Garcés v. Sagner International, Inc.,* 534 F.2d 987 (1st Cir. 1976), plaintiff was not required to exhaust state remedies.

As to defendant's objection to the Magistrate not finding that plaintiff's dismissal from the second employment was illegal, the only relevance this bears to the facts of this case is that part which relates to plaintiff not having made efforts to request reinstatement after being released from treatment for his occupational injuries. This contention is addressed to the argument that plaintiff failed to mitigate damages. In view of our ruling in Part III of this opinion with regard to disability, it is unnecessary to further delve into this matter.

Finally, we address plaintiff's "commentaries" relative to reinstatement or "front pay." Although section 7(b) of the ADEA,

29 U.S.C. Sec. 626(b), authorizes the Court to order reinstatement of the employee, the facts of this case preclude such an order where it has been found that plaintiff is disabled under the Social Security Act. Plaintiff's request that front pay be allowed in the event that defendant refuses to obey the Court's order of reinstatement need not be considered.

Judgment shall be entered for the plaintiff in the amount of $28,037.64 for unpaid back wages, $28,037.64 for liquidated damages, $15,000 for attorney's fees, plus costs.

SO ORDERED.