William MESCHINO, Plaintiff,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Defendant.

No. 81 Civ. 3588 (SWK).

United States District Court, S.D. New York.

May 6, 1987.

**256**

Lane Felcher Kurlander & Fox P.C., New York City by David L. Fox, Pamela Davis, for plaintiff.

Solin & Breindel P.C., New York City by Daniel R. Solin, for defendant.

MEMORANDUM OPINION
AND ORDER

KRAM, District Judge.

On April 16, 1984, a jury found that defendant International Telephone and Telegraph Corporation ("ITT") terminated plaintiff William Meschino's employment at ITT in willful violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA").

The parties agreed to submit all the damages issues to the Court. The Court held a hearing on mitigation on May 21, 1984, and ruled that Meschino had mitigated damages. The Court held a hearing on actual damages on January 20 and 21, 1987. The following are the Court's findings of fact and conclusions of law as to the damages to which Meschino is entitled.

## I. PLAINTIFF'S BURDEN OF PROOF ON DAMAGES

■ The ADEA authorizes district courts to grant an ADEA claimant:

such legal or equitable relief as may be appropriate to effectuate the purposes of this act, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts [owing to a person as a result of the violation of the ADEA].

29 U.S.C. § 626(b). The Second Circuit "encourage[s] district judges in this circuit to fashion remedies designed to ensure that victims of age discrimination are made whole." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 727–28 (2d Cir.1984) (citing Geller v. Markham, 635 F.2d 1027, 1036 (2d Cir.1980), cert. denied, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981)). This makewhole standard of relief entitles a victim of age discrimination to be restored to "the economic position he would have occupied but for the discrimination." Kolb v. Goldring, Inc., 694 F.2d 869, 872 (1st Cir.1982). The plaintiff in an ADEA action has the burden of proof as to damages. Kolb, 694 F.2d at 873; Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1100 n. 7 (8th Cir.1982). ("We believe that in an ADEA action, the plaintiff bears the ulti-

mate burden of persuasion on damages issues.").

ITT argues, relying on *Kolb, supra,* that Meschino's testimony as to what his annual salary, bonus, and fringe benefit increases at ITT would have been had he not been terminated should be stricken because it was not based on first-hand knowledge of ITT's salary and bonus policies after he was terminated, and Meschino is not an expert on ITT's salary policies. If such testimony is stricken, Meschino will have no evidence to support his claim for damages.

■ Meschino's calculations were based on average increases of his salary, bonus, and fringe benefits in his last five years at ITT. Calculating lost earnings based on prior earnings history is an acceptable method for estimating damages under the ADEA. *Maxfield v. Sinclair International,* 766 F.2d 788, 797 (3d Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). ITT's reliance on *Kolb, supra,* is misplaced. The court in *Kolb* ruled only that in the absence of expert testimony, patterns of past pay increases, or other similar objective evidence, proof of future raises would be too speculative. *Kolb,* 694 F.2d at 873. In this case, Meschino supported his claim of future raises with evidence of prior earnings history and thus his testimony is admissible. The issue is whether the testimony satisfies Meschino's burden.

## II. PERIOD FOR WHICH MESCHINO IS ENTITLED TO DAMAGES

The parties agree that Meschino's entitlement to back pay begins on the date his severance pay ended, January 26, 1981. *See Laugesen v. Anaconda Co.,* 510 F.2d 307, 317 (6th Cir.1975). They disagree as to when the period should end.

ITT claims that Meschino would have been terminated in March 1982 due to general staff reductions at ITT headquarters in that year, and that his back pay period should end on October 7, 1982, the date his severance would have ended. John Foley, the head of ITT's Operations Staff, who was the person the jury found had ordered Meschino's unlawful discharge in 1980, testified that Meschino was a good note taker and reporter, but not a person who could initiate change, which is what Foley wanted in a headquarters' executive. Foley said that Meschino was one of the poorest performers in his department, and would have been one of the first persons discharged in ITT's general staff reductions in 1982.

The evidence adduced at the hearing supports Foley's judgment. While Meschino was at ITT, it employed an employee rating scale of 1 to 9, with nine being the highest. Meschino generally received a rating of 7, and one year received a 6. Other people on his staff generally received 8's. Meschino's average rating was in the lower portion of his department. Meschino's salary and bonus were also lower than other executives in his department. Thus, Meschino was one of the poorest performers in his department.

■ A prevailing plaintiff in an ADEA action may not recover damages for the period after which he would have been terminated for a non-discriminatory reason. *Gibson,* 695 F.2d at 1097; *Bonura v. Chase Manhattan Bank,* 629 F.Supp. 353, 356 (S.D.N.Y.), *aff'd,* 795 F.2d 276 (2d Cir. 1986). For example, if the division in which the plaintiff worked was entirely eliminated, he would not be entitled to benefits after that. *Hill v. Spiegel,* 708 F.2d 233, 238 (6th Cir.1983); *Bonura,* 629 F.Supp. at 356. In this case, the number of executives in Meschino's department was reduced from 28 to 24. In the absence of total elimination of the plaintiff's department, the defendant has a heavy burden to show that a plaintiff would have been discharged as part of a partial staff reduction. *See Bonura, supra.*

■ ITT has met its burden. Foley's judgment that Meschino was a poor performer is confirmed by the objective evidence of Meschino's job ratings, salary, and bonus. In addition, the Court's own observation of Meschino, who testified on three separate occasions, confirms Foley's judgment of Meschino. Although the staff reductions in Meschino's department were

small in 1982, the evidence indicates that Meschino would have been cut. The Court thus finds that the end of the back pay period is October 7, 1982.

## III. BACK PAY OWING TO MESCHINO

In calculating back pay, the Court must first determine the salary Meschino would have earned from 1981 to 1982, taking into account any salary increase he would have received. *Bonura,* 629 F.Supp. at 355. Next, the Court must determine the yearly amount of other cash benefits, in this case in the form of bonuses Meschino would have received in 1981 and 1982. *Loubrido v. Hull Dobbs Co. of Puerto Rico, Inc.,* 526 F.Supp. 1055, 1058 (D.P.R.1981). Finally, the Court must determine whether Meschino would have received any fringe benefits had defendants not terminated him. *Bonura,* 629 F.Supp. at 355; *Loubrido,* 526 F.Supp. at 1059.

### A. *Salary and Bonus*

■ Meschino determined that his average annual salary increase in his last five full years at ITT was 8.9 percent, and that the average percentage of his bonus relative to his salary was 15 percent. Meschino then used his final year's salary at ITT as a base, and from it projected his annual salary, bonus and fringe benefits for each year from February 1, 1981, the date his severance ran out, to the present.

ITT offered an alternative projection of Meschino's salary and bonus. Based on the ITT Merit Increase Guideline Guide and executive salary range in effect during the relevant years with respect to grade 21 executives at world headquarters, which ITT supervisors were to apply each year in determining annual salaries, ITT made annual projections of Meschino's salaries. In applying the guide, the two relevant factors are the individual's salary within rank and his performance rating. ITT determined the quartile in which Meschino's salary fell and applied a rating of acceptable to his performance.

With respect to bonuses, the evidence shows that prior to 1983, bonuses were determined with reference to the prior year's award and a general performance factor. To calculate Meschino's bonuses for the years 1980 to 1982, ITT applied the actual rules that were in effect regarding bonuses.

The Court finds that ITT's projections of Meschino's salary and bonus are more accurate than Meschino's. ITT's calculations are based on the rules that ITT supervisors actually used when determining salary in the relevant years. Furthermore, Meschino's projections were based on ITT's profit record prior to 1980; after 1980, however, ITT's profits decreased regularly, and the evidence shows that salary increases and bonuses were affected accordingly. The evidence also indicates that ITT's projections for Meschino would presently place him at the same salary and bonus levels he was at relative to other ITT grade 21 executives in 1980. Meschino's projections would increase his standing dramatically.

Meschino claims his projections are accurate because he would have received a promotion and his performance was better than acceptable. Meschino's claim that he would have been promoted is based on his supervisor Jules Berke's testimony at the trial that he would have promoted Meschino, and suggestions on performance ratings that he be promoted. Meschino's claim that he would have been promoted is too speculative, however, particularly since Jules Berke was replaced after 1980 and could not have promoted Meschino. Meschino's performance ratings, which the Court described earlier, would have justified termination in 1982, not promotion.

Adopting ITT's projections, Meschino is entitled to lost salary in the following amounts. *See* Affidavit of David Rhael, sworn to January 6, 1986 at ¶¶ 7, 8; ITT's Post-Hearing Memorandum of Law, pp. 17–18.

| Dates | Annual Rate | Total |
|---|---|---|
| 2/1/81–5/1/81 | $63,200 | $ 15,800 |
| 5/1/81–7/1/82 | 67,800 | 79,100 |
| 7/1/82–10/7/82 | 71,900 | 19,354 |
| | | $114,254 |

In 1980, Meschino received a bonus of $5,900 for seven months. According to

ITT's calculations, had Meschino worked for the entire year, he would have received $8,800. Meschino is entitled to the difference, or $2,900 for 1980. The bonuses, based on ITT's evidence, are:

| | |
|---|---|
| 1980 | 2,900.00 |
| 1981 | 8,800.00 |
| 1982 | 6,461.54 |
| | $18,161.54 |

### B. *Fringe Benefits*

■ Meschino calculated that the value of his fringe benefits was 12.2 percent of his annual salary. He does not describe what his fringe benefits were. David Rhael, ITT's director of executive compensation testified that in the latest ITT budget, the average fringe benefit for employees at ITT was approximately 18 percent. ITT claims, however, that Meschino is not entitled to that amount of lost fringe benefits. ITT claims that certain benefits, such as travel and accident insurance for ITT related activities, are of no value to Meschino now. ITT also argues that other fringe benefits were on a participatory basis, with Meschino bearing all or a share of the cost.

In order to fulfill his burden as to fringe benefits, Meschino must demonstrate the actual benefits—such as health insurance—he received, the amount ITT paid for those benefits, and losses incurred due to the loss of the benefits. *Bonura*, 629 F.Supp. at 358–61. Meschino failed to advert any such evidence, and his claim for fringe benefits is denied.

### IV. OFFSETS

■ The evidence indicates that Meschino has received $63,762.48 in pension benefits since February 1, 1981. The evidence also indicates that when he was terminated Meschino received $10,860.58 pursuant to ITT's Performance Stock Unit Plan ("PSUP"). The evidence shows that Meschino would not have received money from the PSUP plan had he remained at ITT through 1986, due to ITT's declining earnings. ITT claims that the sum of these two figures should be deducted from Meschino's back pay award. ITT also argues that the back pay award should further be reduced by the sum of social security and unemployment benefits Meschino has received.

Courts have reached different conclusions as to whether pension benefits should be deducted from a back pay award. *Compare Fariss v. Lynchburg Foundry*, 769 F.2d 958, 966–67 (4th Cir.1985); and *Wise v. Olan Mills, Inc.*, 495 F.Supp. 257, 259–60 (D.Col.1980) (deducting pension); *with McDowell v. Avtex Fibers, Inc.*, 740 F.2d 214, 217–218 (3d Cir.1984), *vacated on other grounds*, 469 U.S. 1202, 105 S.Ct. 1159, 84 L.Ed.2d 312 (1985) (not deducting pension).

The Court rules that the pension and PSUP benefits should be deducted. By receiving benefits which he would not have received had he not been terminated, Meschino was receiving compensation for his termination. There is no reason to require ITT to pay twice for discriminating against Meschino and the pension and PSUP benefits should be deducted from his back pay award.

Since Meschino is entitled to back pay through October 7, 1982, he was eligible for a pension as of October 8, 1982. Thus, the Court will deduct only those pension benefits Meschino received prior to October 8, 1982. After that date, there is no back pay from which to deduct pension benefits, and Meschino was entitled to receive pension benefits. Based on the evidence before the Court, Meschino received a pension benefit of $938.22 per month after January 26, 1981. *See* affidavit of Keith Johnson, sworn to January 6, 1986, at ¶ 2. Since Meschino will be receiving back pay from January 27, 1981 through October 7, 1982, the pension he received during that period must be deducted during the back pay period. To determine the amount, the Court multiplies the number of months he received a pension—20—by the monthly benefit—$938.22. This yields a total pension offset of $18,764.40.

■ The Court has the power to order that social security benefits not be deducted from a back pay award. *Maxfield*, 766 F.2d at 793–95; *Wise*, 495 F.Supp. at 259–60. Unlike pension benefits, ITT would

have continued to pay social security payroll tax had Meschino not been terminated. Social security benefits serve a social purpose independent of compensating victims of age discrimination, and deducting benefits would flout this. Furthermore, there is evidence that ITT reduced Meschino's pension benefits when he began to receive social security benefits. With this in mind, the Court exercises its discretion not to deduct Meschino's social security.

■ The district court has similar discretion as to deduction of unemployment insurance benefits from a back pay award under the ADEA. *Syvock v. Milwaukee Boiler Manufacturing Co., Inc.*, 665 F.2d 149, 161 (7th Cir.1981). Many courts have refused to deduct unemployment benefits from back pay awards for reasons similar to their refusal to deduct social security. *See e.g., id.* at 162. In a Title VII case, however, the Second Circuit upheld a district court's decision to deduct unemployment from back pay, stating:

> We see no compelling reason for providing the injured party with double recovery for his lost employment; no compelling reason of deterrence or retribution against the responsible party in this case; and we are not in the business of redistributing wealth beyond the goal of making the victims of discrimination whole.

*EEOC v. Enterprise Association Steamfitters*, 542 F.2d 579, 592 (2d Cir.1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). However, in a National Labor Relations Act case—on which the back pay provision of Title VII was based, *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975)—the Supreme Court ruled that unemployment insurance was a collateral benefit and should not be deducted from a back pay award. *National Labor Relations Board v. Gullet Gin Co.*, 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95 L.Ed. 337 (1951).

In exercising its discretion in this case, the Court finds it would be inappropriate to deduct unemployment compensation from Meschino's back pay award. Immediately following his termination, Meschino actively sought other employment. Any unemployment benefits he received were not a windfall, but assisted Meschino in his job search. Similarly, ITT does not suffer in any way by "paying twice", because it did not pay Meschino's unemployment benefits. While ITT did pay unemployment taxes, it did so into a pool, not for Meschino's benefit in particular, and would have done so whether it discriminated against him or not. Finally, as a general matter, deducting social insurance benefits from a back pay award could seriously undercut back pay provisions of the ADEA, since an employer which discriminates would be relieved of some of the consequences of its action.

## V. LIQUIDATED DAMAGES

■ The parties agree that since the jury found that ITT wilfully violated the ADEA when it terminated Meschino, he is entitled to liquidated damages in an amount equal to his back pay award. *Bonura*, 629 F.Supp. at 362. The parties disagree, however, as to how the liquidated damage award should be calculated. Meschino argues that the offset should be deducted after the back pay is doubled, and ITT argues that it should be doubled net of the offsets. The legislative history of the liquidated damages provision supports ITT's position: liquidated damages are to be "calculated as an amount equal to the pecuniary loss." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13, *reprinted in* 1978 U.S.Code Cong. and Ad.News 504, 528, 535. The Court is also persuaded that ITT's position is the equitable one. There is no reason to increase the liquidated damages award artificially by not deducting offsets before calculating it. *See Fariss*, 769 F.2d at 967 ("Losses arising from a termination ought not to be artificially segregated from gains."). Other courts have, without discussion, based liquidated damages on the back pay award net of offsets as well. *See id.; Bonura*, 629 F.Supp. at 362–63; *Loubrido*, 526 F.Supp. at 1061–62.

## VI. COMPENSATORY DAMAGES

■ Meschino's claim for compensatory damages is denied. Compensatory dam-

ages in ADEA actions are not permitted in this Circuit. *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147–48 (2d Cir.1984). In addition, Meschino presented no evidence upon which this Court could find that he is entitled to compensatory damages.

## VII. PREJUDGMENT INTEREST

■■■ Meschino claims he is entitled to prejudgment interest. ITT argues that since Meschino is receiving liquidated damages, he is not entitled to prejudgment interest. Judge Ward dealt with this issue in a thorough and persuasive opinion and found that a prevailing ADEA plaintiff who receives an award of liquidated damages is entitled to prejudgment interest on the amount of the back pay award. *Bonura*, 629 F.Supp. at 363–66. In surveying the relevant cases, Judge Ward found that of the circuits that had addressed the issue, only the 9th Circuit ruled that prejudgment interest was allowed in such circumstances. *Id.* at 364. Judge Ward also addressed the various justifications the courts had used for denying prejudgment interest, and found they were undercut by the Supreme Court's statement in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985), that liquidated damages under the ADEA were punitive in nature and thus served a different purpose from prejudgment interest. In light of *Thurston*, the Eleventh Circuit reconsidered its earlier position and decided that prejudgment interest was available even when liquidated damages were available. *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094, 1101–02, 43 Fair Empl.Prac.Cas. 143, 149 (11th Cir.1987). The Eleventh Circuit also stated that the other circuits' decisions denying prejudgment interest had been undermined by *Thurston*. *Id.*

Judge Ward found that the purpose of liquidated damages was to punish willful violation of the ADEA and deter others from violating the Act. *Bonura*, 629 F.Supp. at 365. As the purpose of prejudgment interest is to compensate a successful ADEA plaintiff for the loss of the use of money owed to him, awarding prejudgment interest as well as liquidated damages does not provide a plaintiff with a double recovery. *Id.* at 366.

The Court is persuaded by Judge Ward's decision, and therefore awards Meschino prejudgment interest on his back pay award, to be calculated from the date of the jury verdict to the date of judgment.

## VIII. ATTORNEYS' FEES

■■■ A successful ADEA plaintiff is entitled to recover reasonable attorneys' fees. *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 86 (2d Cir.1983). Meschino seeks a total of $112,070 in fees and $7,300.09 in disbursements. ITT has not filed any opposition to the fee request, and the Court finds it to be reasonable. Plaintiff's attorneys have submitted contemporaneous time records to substantiate their hours. The amount of time they spent was reasonable in light of the fact that this case has involved a trial, two post-trial evidentiary hearings, and substantial briefing. Plaintiff's counsel were also highly capable, performed admirably, and are experienced in age discrimination lawsuits. Their hourly rates, at first $150 per hour and later $165 per hour, are below the prevailing market rates for attorneys of such high quality. *See* affidavit of Seymour Shainswit, sworn to February 13, 1986. The Court thus awards Meschino $112,070 in attorneys' fees and $7,300.09 in expenses.

## IX. ADJUSTED PENSION

■■■ Meschino is entitled to have his pension adjusted upward as if he had worked until the date he would have been terminated for a non-discriminatory reason, March 7, 1982. *See Bonura*, 629 F.Supp. at 358. He should also be compensated for the difference in the amount of pension benefits he would have received under the higher rate calculated as if he had worked until March 7, 1982, and the amount he has received since October 7, 1982 based on the lower rate.

## X. NET AWARD

Meschino's award is calculated as follows:

| | |
|---|---|
| $114,254.00 | Lost Salary |
| + 18,161.54 | Lost bonus |
| $132,415.54 | Back pay |
| − 18,764.40 | Pension offset |
| $113,651.14 | |
| − 10,860.50 | PSUP offset |
| $102,790.64 | TOTAL BACK PAY AWARD |
| 102,790.64 | Liquidated damages |
| $205,581.28 | |
| + 119,370.09 | Attorneys fees and disbursements |
| $324,951.37 | |

This total does not reflect prejudgment interest on the back pay award of $102,-790.64. The Court urges the parties to stipulate as to the rate for prejudgment interest, and the total amount, and to submit a judgment reflecting this. The Court expects the parties to stipulate as to Meschino's pension adjustment, and the amount of back pension to which he is entitled, as these are purely mathematical calculations. If the parties cannot stipulate, the plaintiff shall submit within ten days of this order a proposed judgment on notice, and the defendant shall have five days to respond.

SO ORDERED.