Monica ESTES, Plaintiff,

v.

GEORGETOWN UNIVERSITY,
et al., Defendants.

No. CIV.A. 97–0292(JR).

United States District Court,
District of Columbia.

Nov. 6, 2002.

Lynne Bernabei, Debra S. Katz, Ari M. Wilkenfeld, Bernabei & Katz, PLLC, Joseph A. Yablonski, Daniel Edelman, Yablonski, Both & Edelman, Washington, DC, for Plaintiff.

William D. Nussbaum, Jonathan T. Rees, Hogan & Hartson, L.L.P., Washington, DC, for Defendants.

## *MEMORANDUM*

ROBERTSON, District Judge.

Monica Estes sued her former employer, Georgetown University, and her former supervisor, Ernest Porta Jr., for gender discrimination, retaliation, and a hostile work environment, invoking both Title VII, 42 U.S.C. § 2000–e et seq., and the District of Columbia Human Rights Act ("DCHRA"), D.C.Code § 2–1401.01 et seq. After a seven-day trial, an eleven-member jury found for Ms. Estes on her hostile work environment and retaliation claims and awarded her compensatory damages of $40,000, back pay of $50,000, and punitive damages of one million dollars.[1] Defendants now renew their motion for judgment as a matter of law and move, in the alternative, for a new trial. They also move to set aside the back pay award and to reduce the punitive damages award to a de minimis amount. Plaintiff cross-moves for indemnification of income taxes that may be assessed on attorneys' fees and for prejudgment interest on the back pay award. Plaintiff acknowledges that Title VII's statutory cap on damages will reduce her recovery but moves for an order allocating the $40,000 compensatory damage award to her DCHRA claim, so that all of the $300,000 statutory maximum is preserved for punitive damages.

The motions for judgment as a matter of law and a new trial will be denied. The award of punitive damages will not be set aside, but will be reduced to the statutory maximum of $300,000. 42 U.S.C. § 1981a(b)(3). The award of compensatory damages will be allocated to the DCHRA claim. The award of back pay will be set aside. The motion for indemnification will be denied without prejudice. The reasons for these rulings are set forth below.

### 1. Hostile work environment and retaliation claims

■ The trial of this case was a swearing match. The testimony of Ms. Estes was diametrically opposed to that of Mr. Porta. The jury could not have believed one without drawing adverse conclusions about the credibility of the other, and they must have chosen to accept Ms. Estes' account and to reject Mr. Porta's denials that he ever made derogatory or sexist comments. Defendants' disagreement with that choice does not justify disturbing the verdict, nor does my own view of the merits. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.")(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ The evidence of a hostile work environment consisted almost entirely of Ms. Estes' own testimony about sexually-explicit remarks that were made about other women in the office (but not directed at her), and an incident where a male co-employee accessed pornography on the in-

1. Defendants' motion for judgment as a matter of law was granted as to plaintiff's gender discrimination claim at the close of the plaintiff's case-in-chief.

ternet.[2] Mr. Porta confirmed a few of the incidents she described, but his testimony could hardly be called corroborative. There was no evidence of sexual advances or physical contact. Defendants argue that the evidence could not support a jury finding of offensive conduct "sufficiently severe or pervasive to alter the conditions" of Ms. Estes' employment. There is no bright-line formula or legal standard, however, for determining whether the "locker-room atmosphere" described by Ms. Estes was "severe or pervasive." Judgment as a matter of law is appropriate where there is evidence of only isolated comments, teasing, or offhand comments, *Stewart v. Evans*, 275 F.3d 1126, 1133–34 (D.C.Cir. 2002); *Kidane v. Northwest Airlines, Inc.*, 41 F.Supp.2d 12, 16 (D.D.C.1999)(citing *Bundy v. Jackson*, 641 F.2d 934, 943 n. 9 (D.C.Cir.1981)), but Ms. Estes testified that the comments, such as the physical attributes of female employees, were frequent and that the "locker-room" atmosphere of which she complained, pervasive. It was for the jury to decide whom to believe on the question of whether the evidence taken as a whole crossed the line between mere vulgarity, which is not intended to be "purge[d] [from] the workplace" by Title VII, *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir.1995), and offensive conduct that was sufficiently severe or pervasive to alter conditions of employment.

■ Ms. Estes' retaliation claim asserted that she was set up to be fired after she complained to Mr. Porta about her work environment and then was discharged after she complained to an employee assistance program counselor and a human resources officer and after her lawyer delivered to Georgetown's president a detailed written statement of her claims and a demand for settlement. Defendants urge in these post-trial motions that Mr. Porta formed the intent to fire Ms. Estes *before* she met with the human resources officer and before the demand letter was sent, and they invoke *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), to argue that the requisite inference of a causal connection therefore cannot be drawn. There was evidence, however, from which the jury could reasonably have inferred that the decision to fire Ms. Estes was not made final until after the demand letter arrived, or, in the alternative, that Ms. Estes had engaged in other, earlier protected activities that Mr. Porta knew about. One such form of earlier protected activity, according to Ms. Estes' testimony, was her complaints made directly to Mr. Porta. Another was her communication with Eileen Fenrich of the Employee Assistance Program, which the jury may have believed was a medium for Ms. Estes to complain about Mr. Porta regardless of whether it was the right place to take such complaints and regardless of whether the words "discrimination" or "hostile work environment" were used.[3]

**2.** *Barbour v. Browner*, 181 F.3d 1342, 1348 (D.C.Cir.1999) is not authority for the proposition that Ms. Estes' failure to recall the exact time, date, or context of each alleged remark is fatal to her claim.

**3.** Georgetown insisted that Ms. Estes' visits to Dr. Fenrich were not protected activity and objected when I foreclosed further questioning concerning Dr. Fenrich's practice of referring complaints to another department if they appeared to be complaints of discrimination.

Tr. at 729–30. Such questioning would have opened the door for plaintiff to challenge that testimony with information about other discrimination suits against Georgetown—the relevance of which defendants opposed from the start of this case.

During closing arguments, plaintiff's counsel referred to Dr. Fenrich as the "pipeline" back to Porta. Tr. at 1652. Defendant's objection, made now for the first time, is untimely.

■ Defendants' objection to the jury instruction on retaliation—that it left the jury free to conclude that opposing an unfair or unwise personnel action could be protected activity—is overruled. The instruction's definition of protected activity, specifically the requirement of opposition to an "unlawful employment practice," was taken directly from the statute, 42 U.S.C. § 2000e–3(a), after defendants objected to plaintiff's insistence on the word "conduct" instead of "practice." Tr. at 1597–98. I refused defendants' request for language stating that the "unlawful employment practice" must be related to gender discrimination, because the requested language was redundant with a provision at the end of the same instruction that an unwise or even unfair personnel action is not unlawful if it is not motivated by retaliation.

■ Defendants did not object to the instruction that the lawyer's demand letter was protected activity until the jury had retired to deliberate, which was too late. Fed.R.Civ.P. 51; Tr. at 1756–57. Even if the objection had been timely, it was not well-taken. Defendants' theory was that the jury should have had the opportunity to consider the argument that the letter's allegations of discrimination were not made reasonably and in good faith. But defendants objected when the letter was offered in evidence, and their objection was sustained. Thus, there was no record basis for the jury to conclude that the letter was unreasonable or that it was presented by counsel in bad faith. Leigh Freund did testify that Ms. Estes told her in November or December 1996 that the lawyer's letter would protect her from termination, but that statement, without more, would not support an inference of bad faith. Tr. at 1518. In any case, letters to employers complaining of unlawful discrimination are routinely found to be protected activity. *See e.g., Paquin v. Federal Nat'l Mortgage Ass'n,* 119 F.3d 23, 31 (D.C.Cir.1997); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 43, 54 (2d Cir.2002); *Abramson v. William Paterson College,* 260 F.3d 265, 287–88 (3d Cir.2001); *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1255 (10th Cir.2001).

## 2. Back pay award

■ Between the time Georgetown fired Ms. Estes in December 1996 and the date of her trial testimony in August 2002, Ms. Estes' salary increased from $45,000 to $83,000 (plus bonus). Tr. at 971–72. She obtained new employment only a month after she was fired, at a salary almost $7,000 higher than her Georgetown salary. Tr. at 966–67. She moved to another job six months later and received another $5,000 increase. Tr. at 967. In July 1998 she moved to Wilmington, Delaware, because her husband had obtained new employment there, and immediately found jobs that increased her salary yet again. Tr. at 962–63, 968.

Ms. Estes nevertheless attempted to prove that she was economically injured by her discharge. Her proof consisted almost entirely of the opinion testimony of Dr. Amy McCarthy, an economist, that she would have earned more had she stayed at Georgetown than she did by moving from job to job.[4] After hearing Dr. McCarthy's

---

4. Ms. Estes' own testimony about economic injury was that Georgetown has a more generous retirement plan and a more generous leave policy than any of her other employers, and that her children would have been eligible for full scholarships at Georgetown. The record does not disclose whether Ms. Estes ever took maximum advantage of Georgetown's retirement match, or whether Dr. McCarthy attempted to place a dollar value on Georgetown's assertedly more generous leave program, or whether she included in her back pay calculation the present value of college scholarships for Ms. Estes' children. The children may or may not be qualified for admission to Georgetown or to colleges that

testimony, I granted defendants' motion to strike Ms. Estes' demand for front pay and submitted the back pay demand to the jury "subject to later deciding the legal questions raised by the motion." Fed. R.Civ.P. 50(b). The legal question is whether Ms. Estes' proof of economic injury was too speculative. I have concluded, after reviewing the record, that it was.

Dr. McCarthy thought the value of Ms. Estes' continued employment at Georgetown was $69,994 more than what Ms. Estes actually earned between the date she was fired and the date of the trial. Tr. at 950. That opinion rested principally upon the proposition, which Dr. McCarthy "imagine[d]," that had Ms. Estes not been fired, she would instead have been promoted to Mr. Porta's job (six months after the date of her termination) and given a $20,000 raise—to match Mr. Porta's salary of $66,200. Tr. at 946, 972–73. Dr. McCarthy's opinion did not fully account for Ms. Estes' performance reviews, Tr. at 977, nor for the fact that Ms. Estes had not applied for Mr. Porta's job or any other job from 1992 until 1996, Tr. at 975–76, nor did Dr. McCarthy consider Mr. Porta's greater work experience or the fact that he had credentials—a J.D. degree and prior positions as a certified public accountant and a chartered financial analyst—that Ms. Estes lacked. Tr. at 974–75. Most importantly, Dr. McCarthy's income projections completely ignored Ms. Estes' voluntary move to Wilmington in July 1998. Tr. at 962–63, 968.

Ms. Estes' proof of economic injury fell well short of the standard set by cases like *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 567–68 (D.C.Cir.1993) (lost earnings projection based on possible but not probable lines of work was too speculative); *Meschino v. Int'l Tel. & Tel. Corp.*, 661 F.Supp. 254, 258 (S.D.N.Y.1987)(as-

sumption that plaintiff would have been promoted based on praise of former supervisor who had been replaced was too speculative). Unlike the plaintiff in *Brown v. Marsh*, 713 F.Supp. 20, 21–23 (D.D.C. 1989), whose back pay award reasonably assumed a series of promotions, Ms. Estes did not consistently apply for promotions and was not "extolled at every turn" for exceptional work performance. *Id.* at 22.

Because plaintiff's proof of economic injury was impermissibly speculative, the jury's award of back pay must be set aside. Ms. Estes' motion for prejudgment interest on the back pay award is moot.

### 3. Punitive damages

█ I declined to instruct the jury on punitive damages under the D.C. Human Rights Act because no reasonable juror could have found clear and convincing evidence of evil motive or actual malice on the part of either Mr. Porta or Georgetown. *See United Mine Workers v. Moore*, 717 A.2d 332, 341 (D.C.1998). The question then was whether the jury should be given a punitive damage instruction under Title VII's more liberal standard of acting "with malice or with reckless indifference to the federally protected rights" of Ms. Estes. 42 U.S.C. § 1981a(b)(1). If so, the instruction would be applicable only to Georgetown, because punitive damages under Title VII are available only against the employer. *See Gary v. Long*, 59 F.3d 1391, 1399 (D.C.Cir.1995) (Title VII does not impose individual liability).

My decision to instruct the jury that they could award punitive damages under Title VII rested on a single sentence of the Supreme Court's opinion in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)

cooperate with Georgetown's grant of tuition remission, of course, and they are in any

event many years away from college. Tr. at 970–71.

(emphasis added): "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it *may be* acting in violation of federal law, not its awareness that it is engaging in discrimination"; and upon a single fact: the delivery of Ms. Estes' lawyer's demand letter to Georgetown's president on November 27, 1996. That letter put Georgetown on notice of Ms. Estes' claim and imparted to Georgetown the knowledge that, if it fired Ms. Estes, it might be doing so in violation of federal law. This ruling appears to be compelled by *Kolstad,* but its implications are disturbing. If it is correct, an employer who follows through with a planned discharge of an employee after receiving a formal demand letter risks automatic exposure to punitive damages, merely because the employee or her lawyer have been astute enough or quick enough to get the demand letter in the mail before the pink slip arrives.[5] Neither *Kolstad* nor the evidence in this case provides any other basis for the punitive damage instruction. There was no evidence "sufficient to support an inference that the requisite mental state [could] be imputed" to Georgetown, 527 U.S. at 546, 119 S.Ct. 2118, with respect to Ms. Estes' hostile work environment claim. To have permitted the jury to award punitive damages for the hostile work environment on a common law agency theory—simply that Mr. Porta was a manager acting within the scope of his employment—on a record devoid of any corroboration of Ms. Estes' "locker room" testimony[6] or evidence that anyone at Georgetown had notice of the claim before the demand letter of November 27, 1996, would have ignored *Kolstad*'s disapproval of oversimplified vicarious liability for punitive damages and "penalized those employers who educate themselves and their employees on Title VII's prohibitions," *id.* at 544, 119 S.Ct. 2118.[7]

### 4. Other issues

I have carefully reviewed defendants' assertions that a new trial is warranted by any one of several trial rulings: foreclosing inquiry as to the previous ties of Gilbert Brown and Karen Kenner to plaintiff's counsel; allowing Eric Sheppard to testify notwithstanding the existence of his videotaped de bene esse deposition; and receiving "car pool testimony." Those rulings are explained in the record, and none of them warrants a new trial.

A comment by plaintiff's counsel in his closing arguments also does not require a new trial. Appealing to the jury for a punitive damage award, plaintiff's counsel stated: "The mere fact that defendants have avoided having to pay any kinds of damages in that—for front pay . . . is all the more reason that this defendant . . . must be taught a lesson . . . ." Tr. at 1732–33. There was no contemporaneous objection, perhaps because of a tactical decision by counsel that a timely objection

---

5. That is what Ms. Estes apparently thought, according to Leigh Freund's testimony. Tr. at 1518.

6. The "car pool testimony" of Gilbert Brown and Eric Sheppard (what Mr. Porta said about Ms. Estes during car pool rides with other employees) was not corroboration. It was received for the limited purpose of allowing the jury to judge Mr. Porta's credibility.

7. The record of this case is essentially silent as to Georgetown's "good-faith efforts to comply with Title VII," which the Supreme Court recognized as an antidote to vicarious liability for punitive damages. *Kolstad,* 527 U.S. at 545, 119 S.Ct. 2118. Presumably, defendants did not raise this "good faith efforts" defense because of my rulings that it would open the door to proof of other employment discrimination cases against Georgetown. Nevertheless, there is undisputed record evidence that Georgetown did educate its employees on Title VII's prohibitions. Tr. at 1238–39.

would only emphasize a small point that had already passed.

 *Martini v. Federal Nat'l Mortgage Ass'n,* 178 F.3d 1336, 1349 (D.C.Cir. 1999), requires allocation of the compensatory damage award to plaintiff's DCHRA claim.

Plaintiff's motion for indemnification for taxes that may be assessed on an award of attorneys' fees is not ripe for consideration. The determination required by LCvR 54.2(b) has yet to be made.

I have considered the remaining arguments in support of the defendants' motion and find them to be without merit. An appropriate order accompanies this memorandum.

### ORDER

For the reasons set forth in the accompanying memorandum, it is this ___ day of November 2002,

ORDERED that defendants' motion for judgment as a matter of law, or in the alternative, a new trial [# 183], is **denied**, except for the motion to set aside the back pay award [# 183], which is **granted**. It is further

ORDERED that plaintiff's motion for indemnification of taxes that may be assessed on attorneys' fees [# 184] is **denied** without prejudice. It is further

ORDERED that plaintiff's motion [# 184] to reduce the punitive damages award to $300,000 pursuant to 42 U.S.C. § 1981a(b)(3) and to allocate the compensatory damages award of $40,000 to her DCHRA claim is **granted**. It is further

ORDERED that the Clerk of the Court file an amended judgment in favor of plaintiff for $340,000. And it is further

ORDERED pursuant to LCvR 54.2(a) that the time for plaintiff to file an amended motion for attorneys' fees is extended to a date to be set at a later time, and that the parties confer and attempt to reach an agreement on fee issues. The status conference contemplated by LCvR 54.2(a) is set for **December 12, 2002 at 4:30 p.m.**